IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEO HERRMAN,

           Plaintiff,

vs.                               Case No. 09-1297-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 1, 2006, administrative law judge (ALJ) Edmund C. Werre issued his 1st decision (R. at 108-117). On November 5, 2008, the Appeals Council vacated the decision of the ALJ and remanded the case to the ALJ for further hearing (R. at 126-128). On June 10, 2009, ALJ Werre issued his 2nd decision (R. at 21-36). Plaintiff alleges that he has been disabled since November 15, 2003 (R. at 21). Plaintiff is insured for disability insurance benefits through September 30, 2005 (R. at 21, 23). At

step one, the ALJ determined that plaintiff has not performed substantial gainful activity since November 15, 2003, the alleged onset date of disability (R. at 23). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia and asthma (R. at 23). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 26). After determining plaintiff's RFC (R. at 28), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 35). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 35-36). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 36).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.

5

SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings in this case:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work, or work which requires lifting or carrying up to 10 pounds, sitting about 6 hours of an 8-hour day, and standing or walking about 2 hours of an 8-hour day. The claimant require the option to alternate sitting and standing every 30 minutes. He must avoid exposure to temperature and humidity extremes, vibration, hazards such as unprotected heights and being around dangerous moving machinery, and irritants such as chemicals, gases, or fumes.

(R. at 28). The record contains RFC assessments by two treatment providers, Dr. Presston (R. at 614-615) and Dr. Fan (R. at 781-782), and three state agency assessments (R. at 435-443, 780, 784).

Dr. Presston limited plaintiff to standing and/or walking for less than 1 hour in an 8 hour workday, and sitting for only 2 hours in an 8 hour workday (R. at 614). Dr. Presston indicated that plaintiff could never crawl, and should avoid concentrated exposure to most environmental factors. He also indicated that plaintiff would need to lie down as needed during a workday (R. at 615). The ALJ determined that the opinions of Dr. Presston were not entitled to "substantial weight in any area" because: 1) Dr. Presston's opinions were not supported by his objective findings, 2) Dr. Presston was unable to find an etiology for many of plaintiff's symptoms, 3) the short treatment relationship with

7

the plaintiff, and 4) the lack of medical support from any other source (R. at 31).

Dr. Fan limited plaintiff to standing and/or walking for less than 1 hour in an 8 hour workday, and also limited him to sitting for less than 1 hour in an 8 hour workday (R. at 781). He opined that plaintiff could never climb or crawl, and should avoid any exposure to most environmental factors. He also believed that plaintiff would need to lie down through the day, and that his pain or medication would adversely affect his concentration (R. at 782). The ALJ, although noting Dr. Fan's longstanding treatment relationship with the plaintiff, found that his opinions are not entitled to "substantial weight in any area due to the lack of medical support in the record" (R. at 33).[1]

A physical RFC assessment was completed on July 14, 2004, finding that plaintiff had no exertional limitations, and only a few postural and environmental limitations (R. at 435-443).

---

[1] The record also contains a letter from another treating physician, Dr. Rodgman, who opined that plaintiff had been disabled since 1998 due to degenerative changes in his cervical and lumbar spine and chronic myofascial pain. However, Dr. Rodgman offered no opinions regarding specific physical limitations that plaintiff had due to his physical impairments (R. at 555). The ALJ did not give substantial weight to Dr. Rodgman's opinion because it was not supported by objective findings, and was not based on a longstanding treatment relationship. The ALJ also asserted that Dr. Rodgman's opinion was not supported by the findings of any other medical source (R. at 32).

8

However, the ALJ found that plaintiff had greater limitations than those set forth in this state agency RFC assessment. Furthermore, the assessment was completed by an SDM (R. at 442). SDM stands for a "Single Decision Maker." An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Pickett v. Astrue, Case No. 09-1020-JTM (D. Kan. Nov. 25, 2009; Doc. 24 at 17-18); McGlothlin v. Astrue, Case No. 08-1117-WEB (D. Kan. Aug. 4, 2009; Doc. 17 at 7); Toon v. Astrue, Case No. 07-1369-MLB (D. Kan. March 17, 2009; Doc. 18 at 14-15); Ky v. Astrue, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009); Bolton v. Astrue, 2008 WL 2038513 at *4 (M.D. Fla. May 12, 2008); Velasquez v. Astrue, 2008 WL 791950 at *3 (D. Colo. March 20, 2008).

Dr. Cowles, a nonexamining physician, offered a case analysis on May 15, 2007. He opined that plaintiff had no medically determinable impairment which significantly affects his ability to work and which meet durational requirements (R. at 780). Dr. Timmerman, on July 25, 2007, affirmed the findings of Dr. Cowles, stating that plaintiff's physical conditions are non-severe and do not cause any functional restrictions that prevent him from working (R. at 784). The ALJ reviewed the opinion of Dr. Cowles (R. at 33-34), and then stated that the cervical and lumbar radiographs as well as findings of fibromyalgia and treatment for

9

asthma show the plaintiff has severe impairments which necessitate sedentary exertional restrictions (R. at 34).

Thus, the ALJ did not give substantial weight in any area to the RFC opinions of Dr. Presston and Dr. Fan (their findings would preclude plaintiff from performing full-time work); the ALJ also did not give substantial weight in any area to the opinion of Dr. Rodgman that plaintiff was disabled. All three physicians have been treatment providers to the plaintiff. The only other RFC opinion evidence in the record is from a SDM, whose opinions are entitled to no weight. Dr. Cowles, a non-treating and non-examining physician, opined that plaintiff has no medically-determinable impairments that significantly affect his ability to work. Dr. Timmerman, another non-treating and non-examining physician, opined that plaintiff's physical conditions were non-severe. However, the ALJ rejected these opinions, finding that plaintiff has severe impairments[2] of degenerative disc disease of the cervical and lumbar spine, fibromyalgia and asthma that necessitate sedentary exertional restrictions (R. at 23, 34).

The ALJ must make every effort to ensure that the file contains sufficient evidence to assess RFC. Without evidence to support his findings, the ALJ is not in a position to make an RFC determination. <u>Fleetwood v. Barnhart</u>, 211 Fed. Appx. 736, 740

---

[2]A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1521(a) (2010 at 374).

10

(10th Cir. Jan. 4, 2007). In Fleetwood, the court stated that the ALJ should consider contacting the treating doctor(s) in order to obtain sufficient evidence upon which to base an RFC finding; if that option does not provide sufficient evidence, the ALJ may order a consultative examination. 211 Fed. Appx. at 741.

In the case of Lamb v. Barnhart, 85 Fed. Appx. 52, 55-57 (10th Cir. Dec. 11, 2003), the ALJ rejected the opinion of Dr. Osborne, a treating physician, that plaintiff could not perform sedentary work, and the ALJ found that plaintiff had the RFC to perform light work. The court held that the ALJ failed to provide legitimate reasons for rejecting the opinions of Dr. Osborne. The court further held that there was no competent medical evidence in the record to support the ALJ's light work determination because: (1) the RFC assessment forms that were prepared by the two non-examining agency physicians were found not to constitute substantial evidence since they are not accompanied by thorough written reports or persuasive testimony, and (2) except for Dr. Osborne, none of the other doctors who examined the claimant specifically addressed or defined the claimant's exertional limitations (ability to sit, stand, walk, lift, carry, push, and pull) or her nonexertional limitations (reach, handle, stoop, crouch, climb, etc.). As a result, even if the ALJ determined on remand that he is not required to give controlling weight to the opinions of Dr. Osborne, the ALJ cannot

11

then simply conclude, as it appeared he did in the decision under review, that the claimant is therefore capable of light work. Instead, the ALJ must evaluate and make specific findings as to claimant's physical RFC, and the findings must be supported by substantial evidence. The court held that the ALJ must ensure that a sufficient record exists to evaluate the claimant's exertional and nonexertional limitations. The court noted that while the ALJ is not limited to considering only medical evidence, the ALJ's duty to develop the record may include obtaining additional evidence from a treating physician or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding.

The problem with the ALJ's RFC finding that plaintiff has severe impairments that limit him to sedentary work is that he does not cite to any medical evidence or other evidence that supports a finding that plaintiff, despite his severe physical impairments, can perform sedentary work on a full-time basis.[3] None of the medical opinion evidence indicates that plaintiff has severe impairments, but can still perform sedentary work despite those impairments. According to SSR 96-8p, the RFC assessment must include a narrative discussion describing how the evidence

---

[3]Ordinarily, RFC is an assessment of an individual's ability to work 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184 at *1,2.

12

supports each conclusion, citing specific medical facts and nonmedical evidence. The ALJ stated the following:

> ...the undersigned has concluded that the cervical and lumbar radiographs as well as findings of fibromyalgia and treatment for asthma show that the claimant has severe impairments which necessitate sedentary exertional restrictions.

(R. at 34). However, the ALJ, except to make the conclusory statement that these test results and diagnoses support his finding that plaintiff can still perform sedentary work, never offered any rationale or explanation indicating why these test results or diagnoses would support the ALJ's conclusion that plaintiff can still perform sedentary work. Therefore, the ALJ has failed to comply with SSR 96-8p by providing a narrative discussion explaining how the evidence supports the ALJ's conclusion that plaintiff, despite his severe physical impairments, can still perform sedentary work.[4][5]

---

[4] In the ALJ's 1st decision, the ALJ made exertional RFC findings which were identical to his findings in his 2nd decision (R. at 111, 28). When the 1st decision of the ALJ was vacated by the Appeals Council and sent back for further hearing, the Appeals Council directed the ALJ to "provide rationale with specific references to evidence of record in support of assessed limitations" (R. at 127). However, the ALJ failed to follow this direction in his 2nd decision.

[5] The lack of evidence regarding plaintiff's exertional limitations is highlighted by the ALJ's own opinion. When making his RFC findings, the ALJ indicated that plaintiff could perform sedentary work, or work requiring lifting or carrying up to 10 pounds (R. at 28). However, later in his opinion, the ALJ stated that plaintiff, because of back and neck pain and fatigue from fibromyalgia, should avoid lifting more than 20 pounds

The ALJ also discussed plaintiff's daily activities when explaining his RFC findings. In his decision, the ALJ stated the following:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, <u>allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty</u>. Secondly, <u>even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision</u>. Overall, the claimant's reported limited daily activities as described during testimony are considered to be outweighed by the other factors discussed in this decision.

(R. at 29, emphasis added).

In the case of <u>Swanson v. Barnhart</u>, 190 Fed. Appx. 655, 657-658 (10th Cir. Aug. 2, 2006), the ALJ made remarkably similar findings which were discussed by the court as follows:

> <u>The ALJ also stated that he could not "verif[y] with any reasonable degree of</u>

---

occasionally and 10 pounds frequently (R. at 34), which indicates an ability to perform light work. 20 C.F.R. 404.1567(b) (2010 at 392). Thus, at one point, the ALJ asserted that the evidence supported a finding that plaintiff could perform the exertional limitations for light work, while at another point, the ALJ asserted that the evidence supported a finding that plaintiff was limited to the exertional limitations for sedentary work. In fact, the ALJ failed to indicate how the evidence would support a finding that plaintiff could perform the exertional requirements of either light or sedentary work.

14

> <u>certainty" Swanson's alleged limited daily activities and that</u>
>
>> <u>even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.</u>
>
> Aplt.App., Vol. 2 at 25-26. This statement is troubling for a number of reasons. First, we are unaware of-and the Commissioner has not identified-any statute, regulation, ruling or case law directing an ALJ to "verify" by a "reasonable degree of certainty" whether a claimant's daily limitations are as he or she alleges. Objective verifiability is not the standard we have settled upon for credibility issues. Rather, we have long insisted that ALJs rely on evidence that is (1) "substantial"; and (2) "closely and affirmatively" linked to credibility. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).
>
> Second, we are at a loss as to what the ALJ meant by "other reasons" and "other factors."...the ALJ's lack of specificity precludes effective review...
>
> Third, the ALJ does not explain how he reached the conclusion that the medical evidence in Swanson's case is "relatively weak." Aplt.App., Vol. 2 at 26. Apart from the severity of her pain, all of Swanson's conditions appear to be medically documented. Moreover, a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7P, 1996 WL 374186, at *1.

190 Fed. Appx. at 657-658 (emphasis added).

15

The court is troubled by the ALJ's duplication of language previously found to be "troubling" by the 10th Circuit four years ago. As the court stated in Swanson, the court is unaware of, and the Commissioner has not identified any statute, regulation, ruling or case law directing an ALJ to objectively verify, with any reasonable degree of certainty, whether a claimant's daily limitations are as he or she alleges. Objective verifiability is not the standard settled upon for credibility issues. Furthermore, the ALJ failed to specify what he meant by "other reasons" and "other factors;" this lack of specificity precludes effective review.

Finally, although the ALJ states that the medical evidence in support of plaintiff's allegations is relatively weak, plaintiff provided medical opinions from 3 treatment providers in support of his allegation of disabling limitations. To the extent that the medical evidence might be deemed "weak," it is the ALJ who cited to no medical opinions in support of his RFC findings.

As in Swanson, apart from the severity of plaintiff's pain, plaintiff's physical impairments (degenerative disc disease of the cervical and lumbar spine, fibromyalgia and asthma) have been medically documented, and were found to be severe impairments by the ALJ. Plaintiff's statements about the intensity and persistence of pain or other symptoms or about the effect the

16

symptoms have on his ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. Throughout his decision, the ALJ mentions the lack of objective findings:

> In sum, the claimant simply alleges a greater degree of debilitation than what objective evidence can support. There is some evidence of neck and back pain and intermittently positive tender points characteristic of fibromyalgia, but examination findings have been consistently normal (R. at 31).
>
> Dr. Preston's opinion is not supported by his objective findings (R. at 31).
>
> Dr. Rodgman noted that some of the claimant's complaints were difficult to document objectively, and cited the claimant's reported pain, numbness, and weakness in the upper extremities despite normal nerve conduction studies (R. at 32).
>
> Dr. Rodgman's opinion is also not supported by his objective findings (R. at 32).
>
> Dr. Fan's objective findings have been normal (R. at 32).

However, symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone. Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). Furthermore, one of plaintiff's

severe impairments is fibromyalgia.[6]  As this court has previously stated, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity.  Because fibromaylgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition.  Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling.  Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Anderson v. Barnhart, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); see Wilson v. Astrue, 602 F.3d at 1143.  The lack of objective test findings noted by the ALJ is not determinative of the severity of a claimant's fibromyalgia.  Gilbert v. Astrue, 231 Fed. Appx. 778, 784 (10th Cir. April 11, 2007).[7]

---

[6]Both Dr. Fan and Dr. Rodgman diagnosed chronic pain syndrome (R. at 555, 783); Dr. Malik diagnosed fibromyalgia (R. at 605-607).  In Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010), the court noted that diagnoses of chronic pain syndrome, myofascial pain syndrome, and fibromyalgia are often overlapping.

[7]Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms.  Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006).  The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia.  Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn v. Apfel, 102 F. Supp.2d 1252, 1259 (D. Kan. 2000).  The ALJ previously noted that there was evidence of intermittent positive

This case shall therefore be remanded in order for the ALJ to make RFC findings in accordance with SSR 96-8p. The ALJ shall reevaluate all the medical evidence, and shall either recontact the treating physicians in order to obtain additional information regarding plaintiff's RFC, and/or shall obtain a consultative examination with a medical source statement regarding plaintiff's RFC, and/or shall obtain testimony from a medical expert regarding plaintiff's RFC. The ALJ shall also reevaluate plaintiff's daily activities and credibility when the case is remanded. Furthermore, upon remand, the lack of objective findings must be examined by the ALJ in light of the diagnosis of fibromyalgia or chronic pain syndrome.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of September, 2010, Topeka, Kansas.

S/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

tender points characteristic of fibromyalgia (R. at 31).